```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FREDERICKA BUTLER,                            :
                           Plaintiff,         :
v.                                            :
                                              :     OPINION AND ORDER
CITY SCHOOL DISTRICT OF NEW                   :
ROCHELLE, MAGDA PARVEY, individually,         :     19 CV 7395 (VB)
JOSEPH WILLIAMS, individually, and JOHN       :
BARNES, individually,                         :
                           Defendants.        :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Fredericka Butler brings this action pursuant to 42 U.S.C. §§ 1981, 1983 against defendants City School District of New Rochelle (the "District"), Interim Superintendent of Schools Magda Parvey, Assistant Superintendent for Human Resources Joseph Williams, and Principal John Barnes, alleging defendants unlawfully retaliated against plaintiff and subjected plaintiff to unlawful professional stigmatization.

Before the Court is defendants' motion to dismiss under Rule 12(b)(6).  (Doc. #17).[1]

For the following reasons, defendants' motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Defendants filed their motion to dismiss on January 17, 2020. (Doc. #17). By Order dated January 21, 2020, the Court instructed plaintiff to notify the Court whether she intended to file an amended complaint "to address the purported deficiencies made apparent by the fully briefed arguments in defendant's motion," or rely on her original complaint. (Doc. #21). The Order noted that if plaintiff elected not to file an amended complaint, the Court would be unlikely to grant plaintiff a further opportunity to amend the complaint. Plaintiff neither responded to the Order nor timely opposed the motion. Accordingly, the Court sua sponte extended plaintiff's time to oppose the motion. (Doc. #22). Thereafter, plaintiff filed her opposition to the instant motion. (See Doc. #23).

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I. <u>Factual Background</u>

In early September 2018, plaintiff was hired as Interim Assistant Principal at Albert Leonard Middle School (the "School"), in New Rochelle.

Plaintiff alleges that her "time serving as an Interim Assistant Principal was marked by [her supervisor, Principal Barnes's] failing to support her in any regard, and making decisions that had negative consequences that Plaintiff was unfairly blamed for." (Doc. #1 ("Compl.") ¶ 68). Specifically, plaintiff alleges Barnes: (i) failed to provide feedback regarding plaintiff's "job description" and "his expectations of her in her role" (<u>id</u>. ¶ 15), (ii) was not helpful when plaintiff brought to his attention sensitive complaints from students, and (iii) did not properly discipline students. Plaintiff claims that respecting discipline, Barnes, who is white, adhered to the District's "practice and policy to have Plaintiff, a black Assistant Principal, be the public . . . face of out of school suspensions" because plaintiff alleges the District had been "cited" for suspending too many black students. (<u>Id</u>. ¶ 34).

A. <u>Human Resources Complaint</u>

In January 2019, plaintiff alleges that she contacted Joseph Williams, Assistant Superintendent for Human Resources, "to discuss references for when she might begin to look for another position after her time serving as the Interim Assistant Principal might come to an end." (Compl. ¶ 42). She met with Williams on January 29, 2019.

According to plaintiff, during the January 29 meeting, Williams asked plaintiff about "Barnes'[s] comportment and functioning in his position as Principal." (Compl. ¶ 44). Plaintiff alleges she responded to the question by describing the issues she had with Barnes, his "irascible and erratic behavior, and non-support in dealing with parents during suspensions." (Id. ¶ 45).

Plaintiff further alleges she detailed to Williams an incident which allegedly occurred in winter 2018. She claims that "Barnes, who is white, publicly commented during a public meeting about security making more of a presence on some buses, but not on others." (Compl. ¶ 47). According to plaintiff, "[d]uring the exchange, Barnes turned to Plaintiff, a black woman, and asked Plaintiff to confirm, in front of the audience, that the facts relating to the security being more of a presence on some buses, but not others, was 'racist.'" (Id.). Plaintiff claims Barnes asked her about the busing policy at the meeting because she is a Black woman. (See id. ¶ 48). She claims she "gently pushed back and explained that the situation was not racist." (Id. ¶ 49).

Plaintiff alleges that following the January 29 meeting, Williams shared her complaints with Barnes. According to plaintiff, as a result, she began to have further negative interactions with Barnes, in which he would claim plaintiff "wanted [his] job" and that she "was actively seeking to undermine him." (Compl. ¶ 52) (alteration in original).

B.      Testing Responsibilities

Plaintiff also alleges that in January 2019, she commenced efforts to coordinate the English Language Arts ("ELA") and math test procedures for the spring examinations at the School. (See Compl. ¶ 38). Plaintiff alleges she initially asked Barnes for support with the coordinating efforts, but he refused and responded with annoyance, although he eventually hired an assistant to help. According to plaintiff, before the exam, "unionized staff that had previously

agreed to work on coordinating the ELA tests suddenly declined to assist, as a part of an ongoing labor-management dispute that they were having with Barnes." (Id. ¶ 55).

Plaintiff alleges that as a result of the dispute with staff, many students would be delayed taking the test on the day of the exams. Plaintiff alleges that Barnes "insisted that many students take the tests anyway despite projected late starts." (Compl. ¶ 56). However, plaintiff claims that doing so was "illegal . . . if [the students'] reasonable accommodations [required] extra time." (Id. ¶ 57). Plaintiff alleges that as a result of the delayed start times, "some students were unable to finish their tests in the allotted time frames." (Id. ¶ 58). Further, plaintiff attributes problems with the late starts to "the aforementioned labor-management dispute that unionized staff had with . . . Barnes." (Id.).

    C.    <u>Administrative Leave and Termination</u>

Plaintiff alleges that on April 9, 2019, the District, through Williams, "'administratively reassigned[]' Plaintiff to her home, pending an alleged 'investigation' into allegations that she was somehow responsible for the previously-mentioned [ELA] testing fiasco." (Compl. ¶ 71). Plaintiff asserts that any allegations respecting the "testing fiasco" were pretext for terminating her employment. (Id. ¶ 74).

According to plaintiff, in early May 2019, she met with representatives of the District, including Williams, "who explained that Plaintiff would likely be terminated, not only because of the testing fiasco, but also because of her alleged inability to effectively communicate with parents." (Compl. ¶ 75).

Plaintiff was terminated on May 10, 2019, after which she alleges the District posted a job opening for a new Interim Assistant Principal. Plaintiff claims her professional reputation has suffered as a result of her termination because "there is now a hard-to-explain gap in her

resume" and because the District has incorrectly accused her of mishandling ELA testing. (Compl. ¶ 82). Plaintiff further alleges she has since "not been able to find comparable work." (Id. ¶ 84).

## DISCUSSION

I.  Legal Standard

In deciding defendants' Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[2]  Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.        Retaliation Claim

Defendants argue plaintiff cannot plausibly allege a First Amendment retaliation claim because she has not alleged that she engaged in protected activity.

The Court agrees.

The First Amendment prohibits government officials from subjecting a public employee to retaliatory actions for exercising the employee's free speech rights under the First Amendment. Holley v. County of Orange, 625 F. Supp. 2d 131, 140 (S.D.N.Y. 2009). "To prevail on a First Amendment retaliation claim, a public employee must establish: (1) that the speech at issue was protected, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected speech and the adverse employment action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000).

"[T]o determine whether a public employee's speech is constitutionally protected, courts must determine both [whether] the employee spoke as a private citizen and [whether] the speech at issue addressed a matter of public concern." Montero v. City of Yonkers, 890 F.3d 386, 393 (2d Cir. 2018) (citing Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. at 421.

"If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009). When asking whether a public employee spoke as a private citizen, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of [the] employee's duties, not

whether it merely concerns those duties." Montero v. City of Yonkers, 890 F.3d at 398. To answer that question, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012). Indeed, "[w]hen a public employee speaks pursuant to [his or her] employment responsibilities . . . there is no relevant analogue to speech by citizens who are not government employees." Montero v. City of Yonkers, 890 F.3d at 395 (alteration in original).

Here, the Court finds plaintiff has not plausibly alleged her speech was protected because plaintiff does not adequately allege she spoke as a private citizen on a matter of public concern. Plaintiff's sole allegation of protected speech pertains to the winter 2018 meeting during which plaintiff says she was prompted by Principal Barnes to offer her view on whether having security on some buses but not others was racist. For the reasons that follow, plaintiff's claim that this was protected activity is misguided because the incident falls squarely within her duties as Interim Assistant Principal.

First, plaintiff alleges she was prompted to speak by her supervisor, Principal Barnes, on an issue respecting the School. (See Compl. ¶ 47). Plaintiff alleges she offered her opinion, in conflict with Barnes's stated position, that having security on certain buses was not racist. There is no indication in the complaint that plaintiff was speaking as a private citizen on a matter of public concern.

Second, although plaintiff alleges the incident occurred at a public meeting, she includes no factual support for this assertion. She does not allege who attended the meeting, whether the meeting was comprised of school personnel or the general public. Instead, her complaint merely

alleges that she "publicly commented during a public meeting" in a "public forum."  (Compl. ¶¶ 47, 48).  Thus, plaintiff's allegations that her speech was public are entirely conclusory.

Third, the discussion of security on buses falls within the scope of plaintiff's duties as Interim Assistant Principal.  Indeed, the complaint is replete with examples of plaintiff dealing with student problems and parent complaints.  (See, e.g., Compl. ¶ 20, 21, 24, 34, 35, 60, 65, 66).  Concerns respecting a busing scheme related to students at the School are likely to fall on her desk.  Unlike the plaintiff in Matthews v. City of New York, 779 F.3d 167, 174 (2d Cir. 2015), in which the Second Circuit determined that because Matthews "had no role in setting policy" he was speaking as a private citizen, here, as a School administrator invited to speak by her supervisor, plaintiff did have a role in setting policy, and thus she was engaged due to her employment.  Given the nature of the discussion and its relevance to her role at the School, such considerations weigh against finding that plaintiff was speaking as a private citizen on a matter of public concern.

Finally, the allegations respecting the busing incident were referenced in the complaint only in the context of plaintiff's meeting with Williams in Human Resources.  Plaintiff alleges that in that January 2019 meeting, Williams asked plaintiff how she thought her supervisor, Principal Barnes, was performing.  According to plaintiff, she responded by detailing the problems she had with Barnes, including the winter 2018 incident.  Such complaints were not the complaints of a private citizen but rather of an employee who had issues with her supervisor and was offering examples of her supervisor's problematic conduct.  See Sousa v. Roque, 578 F.3d at 174 ("[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern.").

Plaintiff's complaint respecting the winter 2018 incident was rendered in the context of her employment.  It did not reach beyond.

The remaining allegations in the complaint amount to a series of gripes about a difficult supervisor.  Nevertheless, even if the Court were to construe plaintiff's complaint liberally—which it is not required to do in a counseled case—a contorted reading of the complaint does not plausibly allege retaliation for First Amendment protected activity.

Accordingly, the Court concludes plaintiff's First Amendment retaliation claim must be dismissed.

III.    Stigma-Plus Claim

Defendants argue plaintiff cannot plausibly allege a stigma-plus claim because she has not plausibly alleged defendants published false and defamatory statements regarding plaintiff.

The Court agrees.

"Under 'limited circumstances,' government employees may have a cause of action for defamation in the course of, or in connection with, dismissal from government employment." Mudge v. Zugalla, 939 F.3d 72, 80 (2d Cir. 2019) (citing Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010)).  "[T]o constitute deprivation of a liberty interest, the stigmatizing information must be both false . . . and made public . . . by the offending governmental entity." Gentile v. Wallen, 562 F.2d 193, 197 (2d Cir. 1977).  Such a stigma plus claim "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

To establish a stigma-plus claim, a plaintiff must allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and

that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Mudge v. Zugalla, 939 F.3d at 80. "And the statement must be sufficiently public to create or threaten a stigma." Id. at 80–81.

Here, plaintiff has not plausibly alleged defendants made false and defamatory statements that implicate her name and professional reputation and that they did so publicly. According to plaintiff, at a meeting in May 2019, "representatives of [the District] including defendant Joseph Williams," told her that she "would likely be terminated, not only because of the testing fiasco, but also because of her alleged inability to effectively communicate with parents." (Compl. ¶ 75). Plaintiff argues such claims respecting her inability to communicate with parents are pretextual, false, and defamatory.

Taking plaintiff's allegations as true, as the Court must, plaintiff has not plausibly alleged such allegedly defamatory statements were made publicly. Indeed, plaintiff's sole allegation respecting the public nature of her termination was "after the much publicized ELA testing fiasco, [the District] circulated and publicized a notice seeking a new Interim Assistant Principal." (Compl. ¶ 83). Such allegation is insufficient to plausibly allege a stigma-plus claim. See Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 631 (2d Cir. 1996) ("Stigmatizing statements by the government about an employee upon her discharge only implicate a liberty interest when there is also public disclosure."). Absent such public disclosure, plaintiff cannot plausibly allege a stigma-plus claim.

Accordingly, plaintiff's stigma-plus claim must be dismissed.[3]

---

[3] Because the Court concludes plaintiff has not plausibly alleged a First Amendment retaliation claim or a stigma-plus due process claim, the Court declines to address defendants' arguments respecting whether they are entitled to qualified immunity.

IV.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). An amendment to a pleading is futile "if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Here, plaintiff's complaint contains no allegations suggesting she has actionable claims against defendants that could withstand a motion to dismiss. The problems with plaintiff's claims are substantive, and better pleading will not cure them. For these reasons, amendment would be futile. Moreover, following receipt of the instant motion to dismiss, plaintiff declined the Court's invitation to amend her complaint and she has not since requested an opportunity to amend her pleading. Accordingly, the interests of justice do not require granting plaintiff an additional opportunity to amend her complaint.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #17) and close this case.

Dated: August 25, 2020
      White Plains, NY

                                  SO ORDERED:

                                  _____
                                  Vincent L. Briccetti
                                  United States District Judge