UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FREDERICKA BUTLER,                              :
                Plaintiff,        :
v.                                              :
                                                 :   **MEMORANDUM OPINION**
CITY SCHOOL DISTRICT OF NEW                    :   **AND ORDER**
ROCHELLE, MAGDA PARVEY, individually,           :
JOSEPH WILLIAMS, individually, and JOHN         :   19 CV 7395 (VB)
BARNES, individually,                           :
                Defendants.       :
--------------------------------------------------------------x

Briccetti, J.:

      By Opinion and Order dated August 25, 2020, the Court granted a motion to dismiss filed by defendants City School District of New Rochelle (the "District"), Interim Superintendent of Schools Magda Parvey, Assistant Superintendent for Human Resources Joseph Williams, and Principal John Barnes.  (Doc. #32).  Plaintiff now seeks reconsideration.  (Doc. #33).

      For the reasons set forth below, the motion for reconsideration is DENIED.

      The parties' familiarity with the factual and procedural background of this case is presumed.

## DISCUSSION

      Plaintiff contends the Court erred in dismissing her retaliation claim.  She argues the Court clearly erred in construing her retaliation claim as alleging First Amendment retaliation rather than retaliation for opposing racial discrimination.

      Not so.  Even construing plaintiff's claim as alleging retaliation for opposing racial discrimination, the complaint fails to state a claim upon which relief can be granted.

I.   Legal Standards

   A.   Reconsideration

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)).[1]  Such a motion should be granted only when the Court has overlooked facts or precedent that might have altered the conclusion reached in the earlier decision.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Local Civil Rule 6.3.  The movant's burden is weighty to avoid "wasteful repetition of arguments already briefed, considered and decided."  Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

The motion must be "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."  Range Rd. Music, Inc., v. Music Sales Corp., 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000).  Further, the motion "may not advance new facts, issues, or arguments not previously presented to the court."  Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995).  This limitation ensures finality and "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

---

[1]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

C.     Retaliation Under Section 1981

To plead a prima facie case of retaliation under 42 U.S.C. § 1981, a plaintiff must plausibly allege "(1) that she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal

connection between the protected activity and that adverse action." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013). [2]

First, a "protected activity is an action taken to protest or oppose statutorily prohibited discrimination." See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000), superseded on other grounds by regulation, as recognized in Natofsky v. City of N.Y., 921 F.3d 337, 354 (2d Cir. 2019). The employee need not "establish that the conduct she opposed was actually a violation of [Section 1981], but only that she possessed a good faith reasonable belief that the underlying employment practice was unlawful." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). A plaintiff's opposition to discrimination "need not rise to the level of a formal complaint in order to receive . . . protection," Cruz v. Coach Stores, Inc., 202 F.3d at 566, and may be pleaded with allegations of "informal protests of discriminatory employment practices," Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). However, opposing discrimination by co-employees against non-employees is not directed at an unlawful employment practice, and does not constitute protected activity under either Title VII or Section 1981. See, e.g., Wimmer v. Suffolk Cty. Police Dep't, 176 F.3d 125, 134–35 (2d Cir. 1999).

Second, the employer must be aware that the employee engaged in protected activity. See, e.g., Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d at 14. "[I]mplicit in the requirement that the employer have been aware of the protected activity is the

---

[2] Claims for retaliation under Section 1981 overlap with those brought under Title VII of the Civil Rights Act of 1964. See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 454–57 (2008); 42 U.S.C. § 2000e, et seq.; see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 & n.7 (1974) (noting "legislative enactments [in the area of employment discrimination] have long evinced a general intent to accord parallel or overlapping remedies against discrimination," and citing Section 1981).

4

requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [Section 1981]." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d at 292; see also, Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011). "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally." Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308–309 (S.D.N.Y. 2009). An "undisclosed belief" of discriminatory treatment does not "convert an ordinary employment complaint into a protected activity." Id. at 309.

Third, an "adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015). However, "[a]n employee's decision to report discriminatory behavior cannot immunize [her] from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

And fourth, as to the causal connection element, a plaintiff must plausibly allege that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." See Univ. of Tex. S.W. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). Although "a plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action," Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013), a court "must exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," Summa v. Hofstra Univ., 708 F.3d 115, 127 (2d

Cir. 2013). A plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," and that "the adverse action would not have occurred in the absence of the retaliatory motive." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90–91.

II.   Application

Plaintiff does not plausibly plead a Section 1981 retaliation claim.

First, plaintiff does not plausibly allege she engaged in a protected activity by opposing or protesting racial discrimination. See Cruz v. Coach Stores, Inc., 202 F.3d at 566. Plaintiff alleges she "summarized for Williams" an event during which Barnes goaded her, "as a black woman," to confirm at a public meeting that "security making more of a presence on some buses, but not others, was 'racist.'" (Doc. #1 ("Compl.") ¶¶ 45–47). However, plaintiff's statements to Williams do not plausibly allege she opposed or protested racial discrimination. Instead, plaintiff alleges she told Williams that she "gently pushed back and explained that the situation was not racist, and explained to the audience why she disagreed with Barnes, her boss." (Id. ¶ 49) (emphasis added). Furthermore, even if plaintiff's opposition to Barnes's statement did oppose racial discrimination, her statements show opposition to discrimination towards non-employees, not opposition to a discriminatory employment practice. Cf., e.g., Wimmer v. Suffolk Cty. Police Dep't, 176 F.3d at 134–35 (finding on summary judgment that reports of racial slurs by fellow police officers towards citizens could not support retaliation claim for opposing discriminatory employment practice). The complaint does not plausibly allege plaintiff engaged in protected activity opposing or protesting racial discrimination during her conversation with Williams, or at any other point.

Moreover, even if plaintiff's conversation with Williams could be construed as opposing discriminatory employment practices, the complaint fails plausibly to allege the District was

aware of her opposition to racial discrimination.  Plaintiff alleges that "[b]ut for [her] being a black woman, Barnes would not have asked her, in a public forum, to confirm that a particular course of action . . . was racist."  (Compl. ¶ 48).  However, this allegation displays only an undisclosed belief of discriminatory treatment because plaintiff fails to allege she communicated that perception to Williams or any other District employee.  See, e.g., Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d at 308–309.  In addition, while the complaint alleges the District had a "stated practice and policy to have [her], a black assistant principal, be the public [] face of out of school suspensions" (Compl. ¶ 34), plaintiff never alleges she complained about such a policy.

Further, even assuming plaintiff plausibly alleged she engaged in protected activity of which the District was aware, plaintiff does not plausibly allege her January 2019 conversation with Williams was the "but-for" cause of her May 2019 termination.  Plaintiff alleges that, a month after her meeting with Williams, "Barnes began to express retaliatory animus by claiming plaintiff wanted his job," "was actively seeking to undermine him," and "thought that she was smarter than he was."  (Compl. ¶¶ 51–52) (alterations and quotations omitted).  Plaintiff alleges that, thereafter, a "chain of events" took place that consisted of plaintiff being forced to conduct out-of-school suspensions, deal with irate parents, and oversee a "testing fiasco" for which she was unfairly blamed.  (Doc. #36 at 11–12; Compl. ¶¶ 54–70).  These events allegedly culminated in Williams administratively reassigning plaintiff in April 2019 pending an investigation into the "testing fiasco."  (Compl. ¶¶ 71–74).  In May 2019, representatives of the District, including Williams, told plaintiff she would likely be terminated because of the "testing fiasco" and her "alleged inability to effectively communicate with parents."  (Id. ¶ 75).

The complaint does not plausibly allege plaintiff would not have been terminated but-for her complaints about or opposition to discrimination. Viewing the complaint as a whole, plaintiff's alleged protected activity was too attenuated from her termination to plausibly have been the but-for cause of her termination. See Summa v. Hofstra Univ., 708 F.3d at 127. Plaintiff's allegations that the District orchestrated the events following her conversation with Williams to establish pretext to terminate her employment are conclusory. (Compl. ¶¶ 53, 68, 74 76–78). The Court would need to accept these conclusory allegations as fact in order to infer that plaintiff plausibly alleged her January 2019 conversation with Williams was the but-for cause of her May 2019 termination. Other than plaintiff's conclusory allegations that the District orchestrated an intervening chain of events between her conversation with Williams and her termination, the complaint contains no factual content from which the Court can reasonably infer that plaintiff's opposition to or protest of racial discrimination was the but-for cause of her termination. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90–91; Ashcroft v. Iqbal, 556 U.S. at 678.

Finally, while plaintiff does plausibly allege that Barnes's expressions of "retaliatory animus," including comments that plaintiff "wanted his job" or "thought she was smarter than him," were causally related to her January 2019 conversation with Williams (Compl. ¶ 51–52), these allegations, at most, amount to "petty slights" that do not rise to an adverse employment action that would dissuade a reasonable worker from making or supporting a charge of employment discrimination. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68.

The complaint fails plausibly to allege a claim for retaliation for opposing racial discrimination under Section 1981. The Court made no error, clear or otherwise, in dismissing the complaint.

## CONCLUSION

The motion for reconsideration is DENIED.

The Clerk is instructed to terminate the motion. (Doc. #33).

Dated: November 12, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge